208 So.2d 601

**W. D. BAKER**

**v.**

**CITIZENS BANK OF GUNTERSVILLE et al,**

8 Div. 185.

Supreme Court of Alabama.

March 14, 1968.

Clark E. Johnson, Jr., Albertville, for appellant.

Clinton E. Moore, Guntersville, for appellee.

COLEMAN, Justice.

A complainant appeals from a decree in favor of the respondent bank in a suit wherein complainants prayed that the court declare null and void a certain note and mortgage which appellant had executed to the bank.

The trial court declared that the bank held a valid note secured by a valid mortgage on the lands of appellant described on the mortgage. Complainant W. D. Baker appeals.

As stated in his brief, "It is the Appellant's contention on this appeal that the Trial Court should be reversed because the evidence in this cause clearly demonstrated that the consideration for the execution of the mortgage and note was unlawful."

There are several complainants and several respondents, but the contest is between the appellant, a mortgagor, and the appellee bank which is the mortgagee.

▆ Appellee appears to argue that there is a conflict in the evidence on the issue whether the consideration was lawful or unlawful; that the trial court's finding is entitled to a presumption of correctness; and, that, because appellant "did not file a motion for a new trial before the trial judge assigning as grounds for motion . . . . . that the trial judge's verdict was against the great preponderance of the evidence. . . . . .," appellant cannot raise for the first time on this appeal the question of the sufficiency of the evidence to support the findings and decree of the trial court.

In short, appellee contends that, in the absence of a motion for new trial, this court will not review the sufficiency of the evidence to support the finding and decree in the instant case.

In actions at law tried by a jury; Aldridge v. Seaborn, 253 Ala. 603, 46 So.2d 424; Porter v. Alabama Farm Bureau Mutual Cas. Ins. Co., 279 Ala. 499, 504, 187 So.2d 254; and in certain cases in equity where decree is entered on the verdict of a jury; Brintle v. Wood, 223 Ala. 472, 474, 136 So. 803; Hicks v. Allred, 281 Ala. 464, 204 So.2d 813; in the absence of a motion for a new trial timely made, this court, on appeal, will not pass on the weight of the evidence nor review the findings of the jury.

In the instant case there was no jury. Appellant could have applied for a rehearing, but no appeal would lie from an order ruling on the application for rehearing unless the order modified the decree; Equity Rule 62; Odem v. McCormack, 266 Ala. 465, 468, 97 So.2d 574; and a decree overruling such an application for rehearing, which does not modify the final decree, is not subject to review on assignments of error on appeal from the final decree; Long v. O'Mary, 270 Ala. 99, 102, 116 So.2d 563; Mize v. Mize, 273 Ala. 369, 141 So.2d 200.

It appears, therefore, that even if appellant had filed a motion for new trial or application for rehearing, and the trial court had denied the motion or application, appellant still could not obtain a review of the ruling of the trial court. For the purpose of review, a motion for new trial would be useless.

On appeals in equity, in cases tried by the court without a jury, we hold that a motion for new trial is not necessary in order for appellant to obtain review of the sufficiency of the evidence to support the decree of the trial court.

We think the following is a correct statement of the rule which governs our review in the instant case:

"The testimony was given ore tenus before the court, and we must, therefore, accord to the judgment of the trial court the same weight and effect that we would give to the verdict of a jury, and must not disturb the court's conclusion on the evidence unless it is plainly erroneous. (Citations Omitted.)

"While we have steadfastly held to the above rule, on appeals to this court, where the evidence was given ore tenus, nevertheless we have, with equal tenacity, held that 'This court has not renounced its duty nor neglected its power to revise the verdicts of juries and the conclusions of trial judges on questions of fact, where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below, we reach a clear conclusion that the finding and judgment are wrong.' (Citations Omitted.)

"On this appeal, therefore, we are required to review, and consider for ourselves, the evidence offered upon the hearing, and determine whether, after making all reasonable allowances and indulging all reasonable intendments in favor of the court below, we are clearly of the opinion that the finding and judgment of the trial court are wrong. In doing this, the court is solemnly enjoined to 'proceed with great caution; but it should leave no evident mistake unrighted.' (Citations Omitted.)" American Nat. Bank & Trust Co. v. Powell, 235 Ala. 236, 241, 178 So. 21.

The complainants include W. D. Baker and all of the living children of W. D. Baker and wife, Lizzie Baker, except Lessie Baker Mays who is a respondent. The complainants also include the children of a deceased child of W. D. and Lizzie Baker. Lizzie Baker died January 22, 1957.

The four respondents are the bank; Lessie Baker Mays, alias Leola Mays, who is a daughter of W. D. Baker and Lizzie Baker; M. B. Mays, alias M. R. Mays, who is the husband of Lessie Baker Mays; and also Clarence Mays, who is a brother of M. B. Mays. M. B. Mays is sometimes referred to as Marvin Mays.

The land conveyed by the mortgage in question is the same land which was conveyed to W. D. Baker and his wife, Lizzie Baker, in 1956 prior to her death in 1957.

Complainants allege in paragraph 4 of the bill that on June 22, 1959, there was pending in the Circuit Court or County Court of Marshall County a criminal charge; to-wit, violation of Title 14, § 363, 1940 Code, a felony; against said M. B. Mays and said Lessie Mays, husband and wife, which criminal charges were instituted by the respondent bank. The allegations of paragraph 4 are admitted by the bank.

We understand that M. B. Mays, or his wife Lessie Mays, or both, had owned a certain automobile which they had mortgaged to the bank and that M. B. Mays and Lessie Mays were charged with disposing of the mortgaged automobile in violation of the statute.

On June 22, 1959, appellant, W. D. Baker, and Lessie Mays and her husband, M. B. Mays, executed the mortgage herein question, which conveyed to the bank all the interest of the mortgagors in the land which had been conveyed to W. D. Baker and wife, Lizzie Baker, in 1956. The mortgage recites that the mortgagors, being indebted to the bank in the sum of $3,741.-56 evidenced by promissory note of even date with the mortgage, payable $935.92, due each six months after date, plus interest, until paid in full, in consideration thereof and to secure payment of same, the mortgagors convey all their interest in the land upon the conditions stated in the mortgage.

Dr. Couch, president of the bank, testified that prior to June 22, 1959, W. D. Baker and Mrs. Mays came to the bank because of the financial condition of the Mays with the bank; that Mrs. Mays agreed to pay $50.00 a month if we would give her time, and Mr. Baker said he wanted to help her secure an extension on the note and would mortgage his property;[1] that he, Dr. Couch, started the criminal proceedings; that Moore was representing the bank and was following the instructions of the witness; that the witness does not remember that, on the occasion Mr. Baker and Mrs. Mays came to the bank, anything was said to them about the criminal proceedings and the witness did not agree to anything; that Mr. Baker did not owe the bank any money and was trying to help his daughter.

The mortgage was signed in the office of the attorney, Moore, in Guntersville. Moore testified that he did not remember whether the notes, held by the bank and signed by Leola and Marvin Mays, were turned over to him prior to the arrest of M. B. Mays on a warrant from Tennessee, "but it was around about the time"; that, after M. B. Mays was arrested on the Tennessee charge, he had another lawyer with whom Moore was associated in contesting the extradition proceedings from Tennessee; that he, Moore, explained to Marvin Mays and wife, Leola Mays, that Moore was attorney for the bank and could not respresent them in anything that concerned the bank but would be associated with the other attorney in contesting the extradition proceedings; that there

were several conversations with Marvin Mays and his wife; that they kept promising to make payment on this indebtedness but did not do so and further extensions of time could not be granted without additional security; that when Moore was informed that W. D. Baker would sign a note and mortgage on his real estate, Moore asked Leola Mays if her brothers and sisters would sign the note and mortgage; that Leola Mays informed Moore that they would not sign; that Moore told her "that if she and her husband and her father would sign the note and mortgage that I was authorized by the bank to give them—renew the note and give them the extension of time"; that "about 3 or 4 days before the criminal cases against them was (sic) set for trial a discussion came up that if they were tried and convicted and sent to prison, of course, they couldn't make the payments and I (Moore) (Par. Supplied) informed them that as long as they made payments concerning the note that as Special Prosecutor *we* would agree with their attorney to continue the cases, and I wrote out the note that has been introduced, and that I signed, telling them and it states in the note [2] that *we* would continue the case which was set for trial on Thursday, June 25th, and the statement was that as long as they paid the payments the case would be continued and the Citizens Bank upon payment of the indebtedness would not prosecute them unless forced to do so by the State, and I had the agreement of the Solicitor that whatever *we* decided would be done" (Emphasis Supplied.); that on the day that the mortgagors came to Moore's of-

---

1. Dr. Couch testified:

"A · Now, Mrs. Mays agreed to pay $50.00 a month if we would give her time, and Mr. Baker said that he wanted to help her in any way to secure an extension on the note where she could pay it, he said he would be glad to make the mortgage on his property. . . .

". . . . . . . . . .

"A. Yes, he was in there, he knew it was an honest debt and he said if we would give her time he would go ahead **and secure it and give her time to pay**

that off, yes, sir, that is what we agreed on, yes."

2. The "note" referred to recites as follows:

*COMPLAINANT'S EXHIBIT # 1*

"If M. B. Mays and wife, Leola Mays is tried Thursday June 25, 1959 and are sent to the penetentiary, then the Mortgage this date, June 22, 1959, will be cancelled.

        "/s/ Clinton E. Moore
            attorney for Citizens Bank
            of Guntersville, Ala."

fice, before the note and mortgage were signed, they had a rather lengthy discussion of all the cases pending against M.B. Mays and Mrs. Mays; that Moore informed W. D. Baker that he did not have to sign the note, but if he did and Marvin Mays and Leola Mays did not pay the debt, then his property would be subjected to satisfaction of this indebtedness.

On cross-examination Moore testified that he explained that the criminal case against Leola Mays was about to come up for trial; that the conversation in Moore's office occurred 2 or 3 days before the time of trial; that Mr. Baker expressed several times that he wanted to do whatever was necessary to keep his daughter out of the penitentiary; that Moore made the statement that as long as payments were made the cases would be continued and there was an agreement with the state that they would not prosecute;[3] Moore testified that

3. Moore testified:

"Q Did you explain to him that if he signed the note and mortgage that it would keep his daughter out of the penitentiary?

"A I did make the statement that as long as payments were made that the cases would be continued and that there was an agreement with the state that they wouldn't prosecute.

"Q Did you make the statement that by his executing this note and mortgage was one way that his daughter could be kept out of the penitentiary?

"A The reason for coming to the office, Mr. Johnson, was to get his statement that he told Dr. Couch, that he knew they owed the money and they should pay it, that they couldn't pay it if they were sent to the penitentiary and that he would see that it was paid by signing this note and mortgage if we would give them time to pay it.

"Q You didn't state that it was necessary for him to sign this note and mortgage in order to keep his daughter out of the penitentiary? You didn't state that his daughter was about to go to the penitentiary?

"A I didn't say that she would automatically be in the penitentiary if he didn't sign it.

"Q Did you tell him that if he didn't sign it you would do your best to send his daughter to the penitentiary?

"A No, sir, I didn't make that statement.

"Q You had that intention, didn't you?

"A I had the intention of helping prosecute the cases.

"Q And it was your intention to see that they were convicted if possible, was it not?

"A I was going to do the best job I could, yes, sir.

"Q Did you indicated to Mr. Baker what you intended to do?

"A No, sir, I didn't tell him what I was going to do.

"Q Did you tell him that the case was set for trial in 2 or 3 days?

"A He knew that.

"............

"Q All right, when were the criminal proceedings started?

"A I don't remember, I think it was in the early part of '58.

"Q All right, it was pending at the time Dr. Couch got in touch with you about this chat he had with Mr. Baker?

"A Why, yes, sir.

"Q All right, did Mr. Baker ever come to see you before the criminal case started?

"A He was in the office one time with his wife, but no mortgage was discussed at that time.

"Q All right, and you don't know whether he ever went to the bank or not before the criminal proceedings started do you?

"A Just what he said on the witness stand.

"Q I understand, but you don't know when it was that he went to see Dr. Couch? You drew the mortgage up just 2 or 3 days before the trial, didn't you?

"A I don't know.

"Q Was it done beforehand.

"A Well, I don't know whether it was 2 or 3 days or a week or 10 days, I just don't remember.

"Q Well, I mean it all happened while the case was pending?

"A Yes, sir.

"Q All right, and you were acting for the bank when you signed this note?

"A Yes, sir.

"Q That is Complainant's Exhibit Number 1?

"A Yes.

"Q And did you tell Mr. Baker that if he signed the note and mortgage that you would see that the case was continued from time to time?

"A Yes, sir, as long as payments were made.

he continued the case on the 25th, three days later, and again 6 months later; that Leola Mays' case was continued several times because of the agreement.[4]

Appellee does not disagree with the propositions of law relied on by appellant.

■ If the consideration for the note and mortgage was in part illegal, it avoided the whole note and mortgage. Wynne v. Whisenant, 37 Ala. 46, 48.

■ That a contract, the consideration of which is in part illegal, is invalid and cannot be enforced at law, is a question too well settled to admit of doubt. Petit's Adm'r v. Petit's Distributees, 32 Ala. 288; 1 Brick.Dig. 282, § 116. Neither can it be doubted that a contract based upon a promise or agreement to conceal or keep secret a crime which has been committed is opposed to public policy and offensive to the law. Clark v. Colbert, 67 Ala. 92; Moog v. Strang, 69 Ala. 98; U. S. Fidelity & Guar. Co. v. Charles, 131 Ala. 658, 31 So. 558, 57 L.R.A. 212. And it makes no difference if the contract contains an additional consideration that is legal and valuable. Whenever a crime is committed, and especially one that involves moral turpitude, the public good calls for a prosecution of the guilty party, and any effort to prevent the punishment of the offender by suppression or concealment is opposed to public policy. Fol-

"Q How did this benefit Mr. Baker, he didn't have to stand trial, isn't that true?
"A No, sir, he got an extension of time for his daughter within which she said she and her husband could make the payments.
" . . . . . . . . . . . . . .
"Q I understand, and to postpone the criminal case any further, you had to have the note and mortgage, did you not?
"A Clark, as I said, they wanted time within which to pay it, and, of course, they couldn't pay it if they stood trial and were convicted. That is the reason we agreed to continue the cases is to give them a chance to pay this off, and if they didn't, Mr. Baker said he would.
"Q I understand, but now Mr. Baker was obtaining nothing for himself?

mar v. Siler, 132 Ala. 297, 302, 303, 31 So. 719.

See also: People's Bank & Trust Co. v. Floyd, 200 Ala. 192, 75 So. 940; and Orman v. Scharnagel, 210 Ala. 381, 98 So. 123.

If part of the consideration for execution of the note and mortgage by W. D. Baker was the promise by Moore that the prosecution of Baker's daughter or her husband, or both, would be continued and finally suppressed, then the note and mortgage are against public policy and unenforceable. Appellee does not dispute this, but says the evidence supports a findng that such a promise was not part of the consideration.

The evidence offered by complainants clearly requires a finding that the consideration was illegal, but we have set out only evidence which comes from the witnesses for the bank.

Complainant's Exhibit 1 recites that if M. B. Mays and Leola Mays are tried June 25, and are sent to penitentiary, then the mortgage of June 22 will be cancelled. The converse of this promise is that if they are not tried June 25, then the mortgage will not be cancelled. It would be difficult to draw any conclusion other than that the mortgage was given and accepted in exchange for the promise that M. B. and Leola Mays would not be tried at all on June 25. Moore, on direct examination, construed Complainant's

"A Yes, he did.
"Q What?
"A He obtained an extension of time for his daughter within which to pay this indebtedness.
"Q There never was a civil suit brought against them, isn't that true?
"A That's right.
"Q You were going to file a suit if he hadn't got the additional security?
"A Probably."
4. Moore's testimony is:
"Q I am talking about Leola Mays?
"A Her case was continued several times.
"Q Because of this agreement you had?
"A Well, yes."

Exhibit 1 as stating that "we would continue the case which was set for trial on Thursday, June 25th, and the statement was that as long as they paid the payments the case would be continued and the Citizens Bank upon payment of the indebtedness would not prosecute *them* unless forced to do so by the State, and I had the agreement of the Solicitor that whatever *we* decided would be done." (Emphasis Supplied.)

The payments referred to by Moore can be nothing other than the payments required by the mortgage referred too in Complainant's Exhibit 1.

On cross-examination (see footnote 1), Moore testified:

"Q And did you tell Mr. Baker that if he signed the note and mortgage that you would see that the case was continued from time to time?

"A Yes, sir, as long as payments were made."

Moore testified that the amount of the note secured by the mortgage included the indebtedness which Mrs. Mays owed the bank and also the indebtedness which Mar-

vin Mays owed for which Mrs. Mays was not responsible.[5]

On the evidence which we have set out, we are of opinion that the conclusion is required that part of the consideration for the note and mortgage was the agreement stated by Moore to Baker to effect that, if Baker signed the note and mortgage, Moore would see that the case was continued from time to time, with the further assurance that upon payment of the mortgage indebtedness the bank would not prosecute them unless forced to do so by the state and "I had the agreement of the Solicitor that whatever we decided would be done." This is a promise to continue the criminal cases upon execution of the note and mortgage and not to prosecute if the note and mortgage debt were paid. Baker did execute the note and mortgage and Moore did continue the case against Lessie Mays several times because of the agreement which the parties had.

The consideration was in part illegal and avoided the whole note and mortgage. Wynne v. Whisenant, supra.

We do not think the evidence will support any other conclusion and are of opinion

5. Moore testified:
"Q How much money did Mrs. Mays owe the bank prior to June 22, 1959?
"A I was informed that she owed about a thousand dollars, or maybe signed a note with Mr. Mays for that much; it was paid down to about that much.
"Q At the time the note and mortgage was executed Mrs. Mays was obligated to the bank for about a thousand dollars?
"A $877.90 and $853.00
"Q That was a joint note?
"A Yes, sir.
"Q Now, how much more did Marvin Mays owe the bank which Mrs. Mays wasn't responsible for?
"A $1,653.50
"Q All right, what was said in that conversation over there in your office about the fact that you were putting all that together to make one obligation on Mrs. Lessie Mays part of it?
"A They all agreed that it would be put in one note and mortgage and that— because Mr. Marvin Mays had a brother there, C. E. Mays that was going to sign with them, and, we discussed the amount of that indebtedness and it was agreed that was the amount that they did owe and all that was consolidated into one renewal date at that time.
"That was all done in your office, wasn't it?
"A Yes.
"Q How many cases did you have against Marvin Mays?
"A I don't remember whether it was all in one case or whether there was two or three.
"Q You were prosecuting for the bank for selling mortgaged property?
"A Yes, sir.
"Q And that is a felony charge?
"A Yes, sir.
"Q And you had the same charge against Lessie Mays and at this time they were all indicted?
"A Yes, sir.
"Q They were indicted before this June 22nd?—before the June term of court?
"A Yes, sir."

that the decree appealed from must be reversed and the cause remanded with directions to enter a decree declaring the note and mortgage of June 22, 1959, void as to W. D. Baker.

Reversed and remanded with directions.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.